Eric Conard, Esq
Law Office of Eric Conard LLC
832 S Colony Way
Palmer AK 99645
Ph (907) 746-6229
Fax (907) 746-6296

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Dexter Ivie,         Plaintiff, | ) ) ) |
| vs. | ) ) |
| Jennifer Burns,         Defendant. | ) ) ) |
| | )   CASE NO. A-05-117 CV (JWS) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR
ALTERNATIVELY FOR SUMMARY JUDGMENT**

Jennifer Burns, through counsel, respectively requests, that the Court dismiss this action: 1) For failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6); 2) For lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); or 3) For lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

**I.   Introduction.**

In 1999, after the conclusion of trial in the Palmer Superior Court, Judge Culter issued findings of fact and conclusions of law and a final custody / divorce decree between Plaintiff and Ms. Burns in Palmer Superior Court Case 3PA-98- 157 (Palmer case).  Plaintiff has attached these findings of fact and conclusions of law as Exhibit 1 to his complaint in this case.  In late 2001 or early 2002, Plaintiff brought post decree motions before Judge Cutler in the Palmer case. Judge Cutler granted Ms. Burns' cross motion to relinquish child custody jurisdiction pursuant to

the UCCJEA.  See AS 25.30.300 et. seq..  Plaintiff has submitted that order in support of his action. [Exhibit 3]  The pertinent holding from Judge Cutler's order is the following:

> Based on a full review of the file and the pending motions, the Court finds it appropriate to relinquish jurisdiction to the state in which the children now reside, whether that be Kansas or Missouri, under AS 25.30.310(a) and AS 25.30.360.  A review of the initial findings of fact, conclusions of law, and decree reveal that it was fully known at the time of trial in 1998 that the children would be relocated to Kansas if Jennifer retained sole legal custody of them. Dexter's concerns about parental alienation syndrome are worthy of consideration, but he will have to raise those concerns in the court system where the children presently reside.  At this point in time, most of the non-stale evidence relating to those matters is in the state in which the children now reside.
>
> As a practical matter, no therapy can easily be done to restore Dexter's relationship with the children and to "undo" parental alienation, if it existed, unless Dexter physically locates himself near enough to the children for a period of time long enough to engage in such therapy.  Dexter will need to be where he can be occasionally involved with the children in a therapeutic setting over an extended period of time.  This court is confident that the courts of all states highly value parent-child relationships and will make strong efforts to ensure that court orders in custody cases give children an opportunity to have a physically and emotionally safe relationship with each parent.

Plaintiff did not heed Judge Culter's advice as he remains in Alaska to this day.   Shortly after Judge Cutler issued her order, Plaintiff proceeded to the Anchorage Superior Court and filed another civil action.  It is attached as Exhibit A (Anchorage case).  This Court can read that Plaintiff's Anchorage case was, in large part, and attempt to circumvent Judge Cutler's decision relinquishing child custody jurisdiction over the parties' minor children.  Judge Rinder dismissed all custody related claims in Plaintiff's Anchorage case for lack of subject matter jurisdiction in light of Judge Culter's custody rulings in the Palmer case. [Exhibit B]  Judge Rinder also

dismissed the non custody related claims against Ms. Burns for lack of personal jurisdiction, and entered final judgment against Plaintiff. [Id.]

Plaintiff now is before this Court with a civil action that seeks the exact same relief that he sought from in the Palmer case and in the Anchorage case. This Court should dismiss this action for the reasons set out below.

## II. Procedural Standard.

The Court should not dismiss a civil action unless it appears that the Plaintff cannot set forth facts consistent with a cognizable cause of action. Conley v.Gibson,355 U.S. 41, 45 (1957). When making this determination the Court should assume as true all facts set out by the Plaintiff and determine whether those facts could support the granting of judicial relief. See id.

Because Ms. Burns' motion, might turn on the judicial decisions made in the state court actions, this motion also might be considered a summary judgment motion. See Fed. R. Civ. P. 12 (where matters outside the pleadings are presented to the court a Rule 12 motion should be treated as a summary judgment filing). Even if the Court reaches the impact of the prior judicial decisions made by the state courts, the matters before this Court remain issues of law. Therefore, whether this motion is deemed one for summary judgment or to dismiss, Ms. Burns has no objection to the Court accepting as true all facts set out by the Plaintiff.

## III. Discussion.

### A. The United States' Supreme Court decision in Thompson v. Thompson, 484 U.S. 174 (1988), mandates the dismissal of Plaintiff's action.

In Thompson v. Thompson, 484 U.S. 174 (1988), Mr. Thompson filed an action in

federal court seeking: 1) a determination that a custody decree entered by a California state court was valid; 2) a determination that a Louisiana custody decree obtained by Ms. Thompson was invalid; and 3) an injunction enjoining an enforcement of the Louisiana decree. See id. at 178. The Supreme Court affirmed the Court of Appeals holding that Mr. Thompson's complaint failed to state a claim upon which relied could be granted. See id at 179. The Supreme Court anchored its decision on the determination that the Parental Kidnaping Prevention Act (PKPA) failed to create a private cause of action in favor a party to a custody case to determine which of two conflicting state custody decrees is valid. See id. at 188. The Supreme Court noted that Congress, through the PKPA, did not intend to create a federal forum form the litigation of custody disputes, an area of law that traditionally has been the province of the state courts. See id. at 185.

      The Supreme Court's holding in Thompson dooms Plaintiff's action. Assuming Plaintiff's version of the facts as true, he has been frustrated by Ms. Burns and the state court custody process. Plaintiff feels he has been unlawfully deprived visitation with his minor children. After losing in two state forums, Plaintiff is now before this federal forum seeking the same domestic relations relief that he sought in the state forum. Of course, what Plaintiff has failed to do is proceed as Judge Culter advised, that is, to move to the state in which the children are residing and seek the aid of that state court in rehabilitating his relationship with his children. The fact that Plaintiff served Ms. Burns in the state of Hawaii answers his query to this court concerning the state with child custody jurisdiction. But these considerations have little to do with the legal question before this Court. Consistent with Thompson, this Court should dismiss

Plaintiff's complaint for failure to state a claim upon which relief can be granted. Neither the PKPA nor any other jurisdictional statute gives rise to a federal court action for enforcement of custody rights or injunctive relief in aid of enforcing custody rights.

### B. The Rooker-Feldman doctrine deprives this Court of subject matter jurisdiction over this action.

In Exxon Mobile Corp. Et al. v. Saudi Basic Industries Corp., 125 S. Ct. 1517 (2005), the Supreme Court redefined the purpose and contours of the Rooker-Feldman Doctrine. The Court explained that Rooker-Feldman became a part of federal jurisprudence to bar state court losers complaining of injuries caused by state-court judgments from proceeding to federal district court for the review and rejection of the state court judgments. See id. at 1521-22. To permit losing state court litigants to use the federal district courts in this way would permit the federal district courts to effectively sit as appellate tribunals over both state trial and appellate courts. See id. at 1526. Such appellate jurisdiction over state court judgments resides only in the United States Supreme Court by virtue of 28 U.S.C. § 1257. See id.

Plaintiff's civil action fits squarely within the jurisdictional bar created by Rooker-Feldman. Both the Palmer case and the Anchorage case are final conclusive judgments that decided the issues that Plaintiff is bringing before this Court. In the Palmer case Judge Culter refused to enter orders to either enforce or modify her original custody decree. Instead, Judge Cutler determined that child custody jurisdiction no longer existed in the Alaska Courts. If this Court were to entertain Plaintiff's request to enforce Judge Culter's original custody order it would be doing that which Judge Culter herself refused to do. As such, this Court would be converted into an appellate tribunal sitting in review of actions taken by a state court and issuing

a mandate that would contradict the rulings of a state court.

The final judgment in the Anchorage case presents the same problem. In that case, Judge Ridner, relying upon the decisions made by Judge Culter, dismissed Plaintiff's second state court action. If this Court were to entertain Plaintiff's action it would be asked to: 1) assess the legal rulings made by Judge Ridner; 2) determine that Judge Ridner's rulings were incorrect; and 3) order judicial relief. That is an appeal. See Black's Dictionary 7th Ed. (1999) (Appeal "A proceeding undertaken to have a decision reconsidered by bringing it to a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal").

Finally, and possibly a matter of overkill, Ms. Burn also wants to point out that the Anchorage case claims not related to custody were dismissed for lack of personal jurisdiction over Jennifer Burns. Standing Supreme Court precedent mandates that a tribunal adjudicating custody of children must have personal jurisdiction over both parents of the children in order to enter a custody decree consistent with the 14th Amendment's due process guarantees. See May v. Anderson, 345 U.S. 528 (1954). Given that Judge Rinder found personal jurisdiction lacking over Ms. Burns in 2003, Rooker-Feldman would further prohibit this Court from doing anything in this case as such a ruling would have to explicitly or implicitly hold this Court has jurisdiction over the person of Ms. Burns, contrary to a final state court judgment that ruled otherwise.

**IV. Conclusion.**

Ms. Burns respectfully requests that this Court dismiss this action for failure to state a claim; for lack of subject matter jurisdiction, and/or for lack of personal jurisdiction over Ms.

Burns.

Date: 2-8-06                                              /s/ Eric D. Conard
                                                          Eric D. Conard
                                                          AK Bar # 0006036
                                                          Counsel to Jennifer Burns

**Certificate of Service**

I certify that on 2-8-06, I served a copy of this memorandum, Exhibit A, and Exhibit B to:

>   Dexter Ivie
>   PO Box 299073
>   Wasilla AK 99687

/s/ Eric D. Conard
Eric D. Conard